MORTIMER C. ADDOMS v. ISRAEL MARX AND WIFE.

The provision of the statute of 1862, authorizing a suit and execution against the husband on a debt arising out of the contract of the wife, is void in its application to antecedent marriages.

On rule to show cause why a new trial should not be granted.

Argued at November Term, 1887, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the plaintiff, *B. C. Chetwood* and *M. C. Addoms.*

For the defendants, *Charles T. Cowenhoven.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. On the 10th of May, 1873, Amelia Marx, one of the defendants, executed a bond of that date, acknowledging herself indebted to one D. B. in the sum of $11,000. This bond was subsequently assigned to the plaintiff, Addoms, and the suit is founded upon it. It was shown by the evidence that the consideration of this instrument was the conveyance of certain lands to the obligor, Mrs. Marx.

A jury having been waived, the case was tried before one of the justices of the Supreme Court, who directed a judgment to be entered against Mrs. Marx, and non-suited the plaintiff with regard to the husband.

It is manifest that the question to be decided arises out of the application of the statute passed March 24th, 1862 (*Nix. Dig., p.* 548, *pl.* 7), to the facts above stated. That act, in terms, declares that in all cases where a married woman transacts any business or purchases any property, and debts or claims thereby remain unsatisfied, it shall and may be lawful for any person holding any such debt or claim to institute a

suit for the recovery of the same, in any court of law in this state, against the husband and wife. And the section following gives the further right to levy the judgment so authorized on the property, real or personal, of the defendants or either of them.

It is sufficient to say, without going into details, that it appeared from the evidence introduced at the trial that the circumstances were such as to enable the defendant Mrs. Marx to execute the obligation in question, and to bind herself by its stipulations. The inquiry is as to its effect upon the rights of the husband. Did it confer upon the obligee a right of action against him?

In considering this matter it will be assumed, for present purposes, that these defendants were married prior to the passage of the act to which reference has just been made. That the act, in plain terms, confers upon the plaintiff in this case the right of action that he is here putting in force, is not a subject open to the least doubt, so that the only question is whether the legislature had a constitutional authority to pass such enactment.

In the case of *Vankirk* v. *Skillman*, 5 *Vroom* 114, this legislative competency was strongly questioned. With reference to marriages that had been entered into antecedently to the enactment of the law, it was intimated that it would be difficult to vindicate legislation that made the husband liable for debts arising out of contracts under which he acquired no interest, the benefit of which enured solely to his wife, and to which he had given his assent, neither expressly nor by implication. It was pointed out that if the statute were valid a wife might purchase an estate in a foreign country, taking the title to herself, and upon suit brought in this state the husband could be made to pay the consideration, and it was remarked that it was difficult to see how such a transaction was to be distinguished from the taking, by legislative act, the property of one person and giving it to another.

Upon a re-examination of the subject it appears to the court that these exceptions taken to this act of legislation were

well founded.   Such an exercise of power as is exhibited in the
act in question has few prototypes, and, it is believed, no de-
fenders.   It would seem to rest on no principle recognized in
jurisprudence.   It has no relation to the *status* of marriage,
and therefore cannot be justified as a regulation of it.   In every
sense it is exorbitant, for the husband is given no control over
the powers thus vested in the wife, for she can make these
self-regarding contracts even against his express dissent.   Its
effect is to enable the wife to buy what property she pleases
for her own benefit, at the expense of the husband, and this
by indirection is a taking of the property of the latter and
giving it to the former.   If the legislature had said to the
husband, "You must transfer to your wife all of your prop-
erty, or such parts of it as she may desire," while such man-
date would have been a more direct invasion of the vested
rights of property than this legislative measure, in reality it
would not have been more destructive of them.   All the
decisions examined by me are arrayed against the existence of
such a power of legislation.   The legislature, by its fiat, can-
not, as between husband and wife, destroy or impair rights
of property that have become vested.

The subject was considered in the case of *Westervelt* v.
*Gregg*, 2 *Kern.* 202.   The juncture was this:  A husband
had become possessed of a vested interest in a legacy to his
wife, of which he would have been deprived if a statute, sub-
sequently passed, had been sustained, but the court pro-
nounced such provision unconstitutional, on the ground that
to give it force would be to permit the husband's property to
be taken " without due process of law."

Other cases to the same purpose will be found by a refer-
ence to *Cooley's Constitutional Limitations* 361.

It has already been remarked that the legislation here criti-
cised cannot be construed into an attempt to regulate the
relationship of marriage in view of any supposed public
utility.   It has none of the features of a law making pro-
vision for the maintenance of the wife or her children, or to
protect society from the risk of such a burthen.   So it is

equally plain that its exercise is not to be justified by anything embraced in the contract which arose between these parties by the act of marriage which, as is here assumed, occurred prior to the enactment of the law. The result is, therefore, that the statute must be regarded as an emanation of some transcendent power over the subject inherent in the legislature. If the prerogative has no root either in the contract or *status* of marriage, it follows that it stands without circumscription, so that the. legislature can declare not only that the wife may acquire what property she will at the expense of the husband, but that the same rights and reciprocal liability shall arise respectively between child and parent and servant and master.

It is not understood how such a legislative domination as this could exist except in a system of laws that assigned to that department of the government a practical omnipotence so far as proprietary rights were concerned. In this commonwealth no vested right of property can be alienated or impaired except in one of two modes—first, by the consent of the possessor of such right; or second, by a legislative appropriation to a public use and upon compensation rendered. It may well be claimed that a conservation to this extent of the rights of a proprietor would be deemed to arise out of the necessary incidents and very nature of private property; but irrespectively of such theory, it would seem undeniable that such right is prohibited, to the full measure just indicated, by the constitution of this commonwealth. The first clause of that instrument declares that among the inalienable rights of man is that of "acquiring, possessing and protecting property," and a subsequent clause provides that "private property shall not be taken for public use without just compensation." These safeguards are ample for the purposes for which they were designed, and that design was, in the language of Mr. Justice Johnson, in the Supreme Court of the United States (*Bank of Columbia* v. *O'Kely*, 4 *Wheat.* 235), referring to kindred provisions, "to secure the individual from the arbitrary exercise of the powers of government, unrestrained

by the established principles of private rights and distributive justice."

Our conclusion is that with respect to marriages that had occurred antecedently to the passage of this act, the provision in question has no force; in that degree the statute is void.

This result is a vindication of the non-suit. The plaintiff must bring his case, in the proofs, within the operation of a statute giving him a right of action against the husband. At common law he has no such right as is now claimed, consequently his case was imperfect when he failed to show, if such was the fact, that the marriage of these defendants was of a later date than the enactment of the law in question.

The rule should be discharged.